No. 70,592

WARREN BROWN GILLESPIE and POLLY GILLESPIE TOWNSEND, *Plaintiffs/Appellees,* v. DOROTHEA WOFFORD SEYMOUR, as Co-Trustee of the BROWN-GILLESPIE TRUST ESTATE; DOROTHEA WOFFORD SEYMOUR, individually; PAUL A. SEYMOUR, JR.*; PAUL SEYMOUR, III; RUTH BASSETT; ROBERT W. BURDGE; GRANT-THORNTON, an accounting partnership; ARROWHEAD PETROLEUM, INC., a Kansas corporation; and BIG SPRINGS DRILLING, INC., a Kansas Corporation, *Defendants/*Appellant,* and DOROTHEA WOFFORD SEYMOUR, a Co-Trustee of the BROWN-GILLESPIE TRUST ESTATE; and DOROTHEA WOFFORD SEYMOUR, Individually, *Defendants and Third-Party Plaintiffs,* v. JAMES PAUL GILLESPIE, Executor of the Estate of Pauline Brown Gillespie, Deceased, *Third-Party Defendant.*

(877 P.2d 409)

Opinion filed July 8, 1994.

*Terry L. Mann,* of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, argued the cause, and *Robert Martin,* of the same firm, was with him on the briefs for appellant.

*Glenn D. Young, Jr.,* of Young, Bogle, McCausland, Wells & Clark, P.A., of Wichita, argued the cause, and *Jerry D. Bogle,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal from an award of punitive damages entered in an action by the beneficiaries of a trust for recovery of damages for oil and gas investments made by the Trust.

This is the third time the case has been before us. The factual background underlying the action is complex and is set forth in *Gillespie v. Seymour*, 250 Kan. 123, 823 P.2d 782 (1991), hereinafter referred to as *Gillespie I*. In that opinion, *inter alia*, we affirmed the basic compensatory damage award against Paul Seymour, Jr., (hereinafter referred to as Seymour) in the amount of $2,476,422 plus certain allowances for a total damage award of $3,320,029. Awards of punitive damages had been entered against Seymour in the amount of $2,000,000 for a period prior to July 1, 1987, and $89,250 for the period thereafter. K.S.A. 1993 Supp. 60-3701 controls the determination of punitive damage awards on actions accruing between July 1, 1987, and July 1, 1988. We stated:

"The trial court found the plaintiffs' cause of action herein accrued in August 1987. Without stating any legal basis therefor, the trial court circumvented the operation of the [K.S.A. 1990 Supp. 60-3701] by entering two separate punitive damage awards based on the effective date of the statute (July 1, 1987). The award for punitive damages based on conduct occurring prior to July 1, 1987, was made without application of the statute, and the post-July 1 award was presumably in compliance with the statute, although we cannot see from the record the basis for the $89,250 calculation.

"We hold that the determination of the punitive damage award against Seymour was erroneous. Only one award of punitive damages may be entered, and it must be made in accordance with the mandates of K.S.A. 1990 Supp. 60-3701. The awards of punitive damages entered against Seymour must be reversed and the case remanded for entry of a punitive damage award determined pursuant to K.S.A. 1990 Supp. 60-3701." 250 Kan. at 146.

On remand, the trial court's determination was as follows:

"MEMORANDUM OPINION

"I have been directed by the Supreme Court to make a single punitive damage award. This ruling applies to Paul Seymour, Jr. I previously made awards for punitive acts before July 1, 1987 and for punitive act[s] after July 1, 1987. (July 1, 1987 is the effective date of K.S.A. 60-3701.)

"The previous award of punitive [damages] was for $89,250 subsequent to July 1, 1987 and for $2,000,000 prior to July 1, 1987.

"The Court finds that the profitability of defendant's misconduct exceeds the limitation of K.S.A. 60-3701(e). The profitability existed for many years more than the number of years set out in Section (e). The acts began in 1974 and continued until 1987. Plaintiffs suggest that the limitation of section (f) is $6,439,039.

"My previous award as to Paul Seymour, Jr., was $2,089,250. Other awards of punitive damages were made but were reversed on appeal.

"I will not change the amount of the award because of the reversals.

"Punitive damages are awarded to plaintiff against Paul Seymour, Jr., in the amount of $2,089,250.00

"Judgment is entered for plaintiffs against defendant, Paul Seymour, Jr., for punitive damages in the amount of $2,089,250.00."

Seymour appealed this decision, and we again reversed the punitive damage award against Seymour (*Gillespie v. Seymour*, 253 Kan. 169, 853 P.2d 692 [1993], hereinafter referred to as *Gillespie II*).

K.S.A. 1993 Supp. 60-3701 has remained unchanged at all pertinent times herein although it was referred to as K.S.A. 1990 Supp. 60-3701 in *Gillespie I* and K.S.A. 1992 Supp. 60-3701 in *Gillespie II*, by virtue of the time each case was before us. K.S.A. 1993 Supp. 60-3701 provides:

"(a) In any civil action in which exemplary or punitive damages are recoverable, the trier of fact, shall determine, concurrent with all other issues presented, whether such damages shall be allowed. If such damages are allowed, a separate proceeding shall be conducted by the court to determine the amount of such damages to be awarded.

"(b) At a proceeding to determine the amount of exemplary or punitive damages to be awarded under this section, the court may consider:

(1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;

(2) the degree of the defendant's awareness of that likelihood;

(3) the profitability of the defendant's misconduct;

(4) the duration of the misconduct and any intentional concealment of it;

(5) the attitude and conduct of the defendant upon discovery of the misconduct;

(6) the financial condition of the defendant; and

(7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected.

"At the conclusion of the proceeding, the court shall determine the amount of exemplary or punitive damages to be awarded and shall enter judgment for that amount.

"(c) In any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice.

"(d) In no case shall exemplary or punitive damages be assessed pursuant to this section against:

(1) A principal or employer for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer; or

(2) an association, partnership or corporation for the acts of a member, partner or shareholder unless such association, partnership or corporation authorized or ratified the questioned conduct.

"(e) Except as provided by subsection (f), no award of exemplary or punitive damages pursuant to this section shall exceed the lesser of:

(1) The annual gross income earned by the defendant, as determined by the court based upon the defendant's highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded; or

(2) $5 million.

"(f) In lieu of the limitation provided by subsection (e), if the court finds that the profitability of the defendant's misconduct exceeds or is expected to exceed the limitation of subsection (e), the limitation on the amount of exemplary or punitive damages which the court may award shall be an amount equal to 1 1/2 times the amount of profit which the defendant gained or is expected to gain as a result of the defendant's misconduct.

"(g) The provisions of this section shall not apply to any action governed by another statute establishing or limiting the amount of exemplary or punitive damages, or prescribing procedures for the award of such damages, in such action.

"(h) As used in this section the terms defined in K.S.A. 60-3401 and amendments thereto shall have the meaning provided by that statute.

"(i) The provisions of this section shall apply only to an action based upon a cause of action accruing on or after July 1, 1987 and before July 1, 1988."

In *Gillespie II*, we held:

"The enactment of K.S.A. 1992 Supp. 60-3701 (and its companion K.S.A. 1992 Supp. 60-3702) represents a substantial change in the award of punitive damages in Kansas. Prior thereto, the trier of fact determined the amount of damages based upon rather nebulous factors. Appellate review thereof was limited. We stated the general rules relative to punitive damages in *Binyon v. Nesseth*, 231 Kan. 381, 386, 646 P.2d 1043 (1982), as follows:

'An appellate court will not find a punitive damage award excessive unless it is of a size to shock the conscience of the appellate court. See, *e.g., Cantrell v. R. D. Werner Co.*, 226 Kan. 681, 686, 602 P.2d 1326 (1979); *Henderson v. Hassur,* 225 Kan. 678, 697, 594 P.2d 650 (1979). The Court of Appeals in 7 Kan. App. 2d at 118 quoted *Henderson v. Hassur* on principles of law governing the extent of punitive damages allowed. That portion of *Henderson* reads:

" 'It is difficult, if not impossible, to lay down precise rules by which to test the question of when a verdict for punitive damages is excessive. *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, 273, 133 P.2d 149 (1943). Punitive damages are imposed by way of punishing a party for malicious or vindictive acts or for a willful and wanton invasion of another party's rights, the purpose being to restrain him and to deter others from the commission of like wrongs. *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 402, 507 P.2d 189 (1973). The law establishes no fixed ratio between actual and exemplary damages by which to determine excessiveness. In assessing punitive damages the nature, extent, and enormity of the wrong, the intent of the party committing it, and all circumstances attending the transaction involved should be considered. Any mitigating circumstances which may bear upon any of the above factors may be considered to reduce such damages. *Will v. Hughes,* 172 Kan. 45, 55, 238 P.2d 478 (1951). In fixing an award of punitive damages a jury may consider the amount of actual damages recovered, defendant's financial condition and the probable litigation expenses. *Ayers v. Christiansen,* 222 Kan. 225, 229, 564 P.2d 458 (1977).' 225 Kan. at 694.' "

"Under K.S.A. 1992 Supp. 60-3701, a bifurcated proceeding is established. The trier of fact determines if punitive damages should be awarded. The court, in a separate proceeding, then establishes the amount thereof. A substantial list of factors is set forth in the court's consideration in determining the amount of the award. Limitations on the amount of the award are set forth in subsection (e) and (f) as follows (repeated for convenience):

'(e) Except as provided by subsection (f), no award of exemplary or punitive damages pursuant to this section shall exceed the lesser of:

(1) The annual gross income earned by the defendant, as determined by the court based upon the defendant's highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded; or

(2) $5 million.

'(f) In lieu of the limitation provided by subsection (e), if the court finds that the profitability of the defendant's misconduct exceeds or is expected to exceed the limitation of subsection (e), the limitation on the amount of exemplary or punitive damages which the court may award shall be an amount equal to 1½ times the amount of profit which the defendant gained or is expected to gain as a result of the defendant's misconduct.'

"We believe that it is the clear legislative intent of K.S.A. 1992 Supp. 60-3701(e) and (f) that sufficient findings of fact be made by the district court to

afford meaningful appellate review of the size of the award. If the award entered had been $865,861 under (e)(1) it would have been sufficient herein to state that amount, as the parties had agreed on the figure. The district court opted, however, to award punitive damages subject to the restriction in subsection (f). It was, therefore, incumbent upon the district court to make sufficient findings of fact to afford meaningful appellate review. This, obviously, did not occur herein and the punitive damage award against Paul Seymour, Jr., must, again, be reversed and the matter remanded for redetermination. Under the totality of the circumstances, we conclude that, upon remand, the matter should be assigned to a different district court judge.

"The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion." 253 Kan. at 172-74.

On the remand of *Gillespie II*, Judge C. Robert Bell replaced Judge Paul Buchanan. Judge Bell awarded punitive damages against Seymour in the amount of $2,000,000 under K.S.A. 1993 Supp. 60-3701(f). In this action, Seymour appeals therefrom.

By virtue of the issues raised, it is necessary to set forth, in toto, the memorandum opinion of the trial court as follows:

### "FINDINGS OF FACT, CONCLUSIONS OF LAW and AWARD OF PUNITIVE DAMAGES

"As the Supreme Court has pointed out in its opinion found in *Gillespie vs. Seymour*, 253 Kan. 169 (1993), the factual background of this case is complex and is mostly set forth in *Gillespie vs. Seymour*, 250 Kan. 123, 823 pac. 2nd 782 (1991), referred to in the later opinion as Gillespie I. The Court will refer to the later opinion as Gillespie II. The Court in Gillespie I awarded total compensatory damages of $3,320,029. Of this figure $843,607 was a tax correction factor added to a basic award for compensatory damages in that initial case of $2,476,422. The compensatory award was left undisturbed by the Appellate Court in both Gillespie I and Gillespie II. In Gillespie I the Trial Court had awarded punitive damages on a bifurcated basis according to the years in which the various activities took place and which were governed by different punitive damages statutes. The Court also awarded punitive damages against others than Paul A. Seymour Jr. In Gillespie II the Supreme Court set aside the finding of the trial court awarding punitive damages against Paul Seymour Jr. in the amount of $2,089,250. for the reason that the Trial Court failed to make findings relating to the assessment of the punitive damages. The Court ordered that upon remand the matter should be assigned to a different District Court Judge. It has been assigned to this division.

"The Court has conducted an evidentiary hearing and has received briefing from counsel in connection with the matter and has made the following preliminary ruling before commencing the evidentiary hearing; to wit; that the threshold issue before the Court is the question of the profitability of the actions

involved in Paul Seymour Jr. and that the Court would assume that the entire amount awarded as compensatory damages was profit to Seymour unless the defendant Seymour could carry the burden of going forward to demonstrate otherwise. Defendant Seymour, through his counsel, has objected to this ruling of the Court but the proceedings were conducted with that rule in place. Following the presentation of evidence, the Court extended to counsel for all parties for an opportunity to supplement the record; the additional exhibits submitted are hereby incorporated as D, E, F, and G. The defendant contends that the maximum amount available under subsection (f) of K.S.A. 60-3701 is $632,520, and because that amount is less than that available under subsection (e), it is not appropriate to award damages under subsection (f).

"The amount available under subsection (f) is calculated by defendant by combining the trust 'overcharges' and the profit earned by Paul Seymour, Jr. on the oil and gas leases he owned individually. According to plaintiffs' expert, Gary Gibbs, the Brown-Gillespie Trust was overcharged a total of $668,149. during the period from 1974 through 1987. (Plaintiffs' Trial exhibit 77). Since Paul Seymour, Jr. was a fifty-one percent owner of Arrowhead Petroleum, his maximum profit from those overcharges would be $263,532. (Defendant's Calculation of Profit). Paul Seymour Jr. earned $368,988 profit on oil and gas wells he invested in during the period from 1974 through 1987. (Defendant's Calculation of Profit). The overcharges and the profit combine to equal a maximum of $632,520. (Id.) According to K.S.A. 60-3701 (f), that subsection is only to be applied in cases in which the defendant's profit exceeds the amount available under subsection (e). Therefore defendant contends that since profit earned from the wrongdoing did not exceed $865,861, subsection (f) should not be applied.

"The Court makes the following findings:

"1. Paul A. Seymour Jr. was aware that his misconduct, that is, his finagling and cheating the Trust would cause serious harm and damage to the Trust or as stated by the Court in Gillespie I at page 137 'In the case before us, overcharging the Trust account is only a portion of the claim. The Trial court found, in essence, that Seymour systematically engaged in a plan to allocate worthless or low value oil and gas interests to the Trust, in exchange for its investments in the company he dominated, Arrowhead.' At page 142 'In essence (the Trial Court) held that the Trust was systematically cheated in the way Arrowhead and Seymour applied the investment funds.'

"2. Seymour's highest gross annual income within the five year period as provided under K.S.A. 60-3701(e)(1), was $865,851.

"3. Seymour's misconduct occurred over a period of at least 14 years from 1974 to 1987. He will be seventy years old on January 7, 1994.

"4. Seymour concealed his misconduct over said 14 year period by failing to maintain adequate business records; destroying business records; and in failing to advise Pauline Gillespie of the full story of how the Trust monies were handled.

"5. Seymour's attitude upon discovery of his misconduct was consistent denial evidenced by his testifying untruthfully at the time of trial to justify his misconduct. This attitude shows no sign of amelioration or change even to the present. No expression of contrition or acknowledgment of wrongdoing has ever been made in this record by Seymour.

"6. Evidence of Seymour's financial condition was offered at the punitive damages evidentiary hearing conducted on November 7, 1990. At that time plaintiff exhibit 1 reflected Seymour's net worth to be $595,356. All defendants filed for protection under the Bankruptcy Act Chapter 11 on December 28, 1990 and the proceedings ongoing in the bankruptcy court have not resulted in a final executed plan but are still undergoing a series of revisions. The Court finds that the motions by the plaintiffs to have all or portions of the compensatory damages awarded by the trial court declared nondischargeable have not yet been acted upon. The Court further finds that any punitive damages awarded herein will be nondischargeable in bankruptcy.

"7. Seymour has received [sic] no other damages or punishment, civil or criminal, resulting from his misconduct.

"8. The maximum award under K.S.A. 60-3701(e)(1) is $865,861.

"9. Seymour's profitability from said misconduct was $2,642,500., the amount of money Seymour benefitted by cheating the Trust. It is irrelevant that he was not a good enough oil operator to multiply the 'ill gotten' funds.

"10. The maximum award under K.S.A. 60-3701(f) is one and one half times $2,642,500. or $3,963,750. The Court expressly rejects the notion that the defendant Seymour has been adequately punished by the award of actual damages herein. The Court notes that Seymour utilized Trust funds to fulfill his obligations to participate in other drilling programs on wells completed as dry holes and that he utilized carried interests made possible by the Trust funds as a means of additional compensation to himself and other employees of his operating company. The Court further is of the opinion that the activities of Seymour are matters of high profile in the oil business in general and that the oil business is particularly sensitive to the deterrent effect of punishment for fraudulent and finagling activities. As then Justice Schroeder said in *Adair vs. Transcontinental Oil Co.*, 184 Kan. 454, 338 pac. 2nd (1959) at page 472, 'The oil industry is fraught with brilliant and ingenious minds, some of which, lured to the industry by the element of chance and potentially fabulous profits, are bent upon sharp practices. The law must be ever vigilant to prevent fraud.'

"The Court is of the opinion that it is not necessary to award the maximum possible damages of $3,963,750. to have a deterrent effect on others but the Court is disturbed by the apparent necessity, due to the complicated history of this case, that it should award something less than an amount equal to the actual compensatory damages (unadjusted for tax benefits) as punitive damages. It is of course true that there were activities by others such as Dorothea and Paul Seymour III which could have contributed to the cumulation of the actual damages and for which the Supreme Court has previously decided that Dorothea

and Paul III should not be liable for participating in a breach of trust for punitive damages. This Court accordingly takes cognizance of these rulings when it states that the punitive award should be somewhat reduced from the amount of compensatory damages by virtue of these rulings.

"The Court finds that the award of punitive damages in this case against Paul Seymour Jr. should be and hereby is assessed at $2,000,000.

"This order is effective upon the date it bears having been filed by the Court with the Clerk in the original and copies disseminated to Counsel on said date.

"October 25, 1993
    "DATED

                    "/s/ C. Robert Bell
                    "C. Robert Bell
                    "Judge, Division 24

The first three issues herein are interrelated and are as follows:

1. Whether the trial court erred in imposing upon Seymour the burden of proving the amount of punitive damages;

2. Whether the trial court committed error by disregarding the undisputed evidence of Seymour's "profit"; and

3. Whether the punitive damage award is supported by the evidence.

Central to all three issues is whether the trial court erred in its holding as to what constituted Seymour's profit. As will be recalled, an award for punitive damages under K.S.A. 1993 Supp. 60-3701(e) may not exceed the lesser of:

"(1) The annual gross income earned by the defendant, as determined by the court based upon the defendant's highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded; or

(2) $5 million."

It is undisputed that the annual gross income under subsection (e)(1) is $865,861. The punitive damage award herein may not exceed that amount unless the court finds the profitability of the defendant's misconduct exceeds or is expected to exceed $865,861 (subsection [f]). Seymour introduced expert testimony that he personally profited from the Trust's investments in Arrowhead Petroleum, Inc., the corporation in which Seymour is an officer and 51 percent owner of the stock, in the amount of $632,520. Inasmuch as this sum is less than $865,861, Seymour argues the

trial court erred in awarding damages under subsection (f). We do not agree.

Before proceeding further it is appropriate to clear up the confusion that appears to exist in the trial court's opinion by virtue of the inclusion of two figures as to the Trust's damages. The basic compensatory award was $2,476,422, to which were added certain allowances for a total compensatory damage award of $3,320,029. The complex means used to arrive at these figures is discussed in *Gillespie I* and need not be repeated herein. In *Gillespie I* there was a finding that the Trust's investments in Arrowhead were in the amount of $2,642,000. As we stated in *Gillespie I*:

"In essence, the trial court voided all the Trust's Arrowhead investments from and after 1974, took off the tax savings made each year as a result of the investments, computed what the Trust would have made in the after-tax investments of part of the Trust's stock and bond portfolio, and allowed for income tax on the judgment. This, the trial court concluded, would make the Trust whole for the damage it had sustained." 250 Kan. at 141.

Thus, the $2,642,000 figure was reduced to $2,476,422 in the basic compensatory damage award. In its finding of Seymour's profits, the trial court utilizes the total Trust investment figure of $2,642,000. No issue is raised herein as to the utilization of the gross, unadjusted figure as opposed to the basic compensatory damage figure of $2,476,422. It is clear from the trial court's rationale that the punitive damage award would have remained the same no matter which of the two figures had been utilized. For consistency and the sake of simplicity, we will use the actual basic compensatory damage figure utilized by the trial court as Seymour's profit. After this digression, we return to our discussion of the issues.

Profit is defined in Webster's New Collegiate Dictionary 919 (5th ed. 1977) as:

"**profit** . . . **1**: a valuable return: GAIN **2**: the excess of returns over expenditure in a transaction or series of transactions; *esp*: the excess of the selling price of goods over their cost **3**: net income usu. for a given period of time **4**: the ratio of profit for a given year to the amount of capital invested or to the value of sales **5**: the compensation accruing to entrepreneurs for the assumption of risk in business enterprise as distinguished from wages or rent."

This definition is consistent with the common understanding that profit is gain over expenditure. As used in K.S.A. 1993 Supp. 60-3701(b)(3) we believe it has a broader meaning. It must be borne in mind that K.S.A. 1993 Supp. 60-3701 applies to punitive damage awards in general. Product liability actions frequently include claims for punitive damages. In such actions there is no correlation between the compensatory damage award and the defendant's "profit" on the transaction. A product which sold for $25 may cause millions of dollars of personal injury or property damage. In such cases "profit" involves looking at the defendant's profit from the course of conduct giving rise to the plaintiff's injuries. See *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d 346, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981). In the case before us, we have an affirmed award of compensatory damages in the amount of $2,476,422. Neither personal injury nor property damage is involved. This involves money only, and the compensatory damage figure represents the Trust's injury as a result of what the trial court refers to as Seymour's "finagling" of its investments. Under the circumstances herein, we find no error in the trial court's determination that the amount of compensatory damages was Seymour's profit under K.S.A. 1993 Supp. 60-3701. To hold otherwise could lead to incongruous results. As the plaintiffs point out, under Seymour's theory, had Seymour gambled away all the Trust moneys in Las Vegas, he could argue he had no profit at all—despite the Trust's huge loss of funds.

With this basic determination having been made, we turn to the particular claims made in the first three issues. Seymour first contends the trial court erred in placing the burden of proving punitive damages upon Seymour. This claim is without merit. The trial court had the affirmed award of compensatory damages before it. In the hearing it only afforded Seymour the opportunity to introduce evidence of and to argue that a lesser figure should be utilized as his "profit." This does not constitute an improper shifting of the burden of proof.

Next, Seymour argues that the trial court ignored the undisputed evidence from his expert that Seymour personally profited

only to the extent of $632,520. This issue is controlled by our previous determination as to what was Seymour's profit herein.

Finally, Seymour argues that the award is not supported by the evidence. Again, this issue is essentially the same question as to what is profit. Additionally, we note that the trial court considered each of seven factors set forth in K.S.A. 1993 Supp. 60-3701(b)(1)-(7) and made findings of fact relative to each. These findings are supported by the evidence, and our collective conscience is not shocked by the size of the award. We find no error or abuse of discretion in any of the first three issues.

For his next issue, Seymour contends that no punitive damage award should be entered herein. The crux of his argument is that as the punitive damage awards entered against him in *Gillespie I* and *II* were reversed and remanded, and as the punitive damage award herein is also fatally flawed, a sort of three-strikes-and-you-are-out-rule should preclude any further consideration of punitive damages herein. We are unaware of any case in which such rule has been applied. In any event, we have found no error in the entry of punitive damages herein and so this issue is moot.

For his final issue, Seymour contends the trial court erred in holding that the punitive damage award was not dischargeable in Seymour's pending bankruptcy proceedings.

In *Matter of Brown*, 56 Bankr. 954, 956 (Bankr. E.D. Mich. 1986), the court stated:

"The subject matter of bankruptcies is the relation between an insolvent and his creditors extending to his and their relief. *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 58 S. Ct. 1025, 82 L. Ed. 1490 (1938), rehearing denied 305 U.S. 668, 59 S. Ct. 56, 83 L. Ed. 434. The authority to establish a uniform system of bankruptcy rests with Congress, and is derived from the United States Constitution. This authority is codified in the Bankruptcy Code. The district courts have original and exclusive jurisdiction of cases arising under Title 11. See, 28 U.S.C. § 1334(a)

". . . The grant of federal jurisdiction to the bankruptcy court on the traditional bankruptcy matters contained in Title 11 is paramount to that of the state courts."

See *In re Harris*, 155 Bankr. 135, 136-37 (Bankr. E.D. Va. 1993); *In re Rabeiro*, 151 Bankr. 965, 967 (Bankr. M.D. Fla. 1993).

In *Brown v. Felsen*, 442 U.S. 127, 134-39, 60 L. Ed. 2d 767, 99 S. Ct. 2205 (1979), the United States Supreme Court held that

a state court decision, irrespective of its contents, could not have res judicata effect on a bankruptcy court's determination of dischargeability because dischargeability is "the type of question Congress intended that the bankruptcy court would resolve." 442 U.S. at 138. At issue in *Brown* was whether the bankruptcy court could consider extrinsic evidence in determining the dischargeability of a judgment. The *Brown* decision held that the bankruptcy court could consider such evidence and that a contrary rule would frustrate the purpose of the Bankruptcy Act.

Whether or not the punitive damage award is dischargeable in the pending bankruptcy proceeding is for the bankruptcy court to determine. The trial court herein lacked jurisdiction to declare the award nondischargeable and, accordingly, erred in attempting to determine this issue.

The judgment is affirmed in part and reversed in part.