No. 68,691

WARREN BROWN GILLESPIE and POLLY GILLESPIE TOWNSEND, *Plaintiffs/Appellees*, v. DOROTHEA WOFFORD SEYMOUR, as Co-Trustee of the BROWN-GILLESPIE TRUST ESTATE; DOROTHEA WOFFORD SEYMOUR, individually; PAUL A. SEYMOUR, JR.*; PAUL SEYMOUR, III; RUTH BASSETT; ROBERT W. BURDGE; GRANT THORNTON, an accounting partnership; ARROWHEAD PETROLEUM, INC., a Kansas corporation; and BIG SPRINGS DRILLING, INC., a Kansas corporation, *Defendants/*Appellant*,
and
DOROTHEA WOFFORD SEYMOUR, as Co-Trustee of the BROWN-GILLESPIE TRUST ESTATE; and DOROTHEA WOFFORD SEYMOUR, Individually, *Defendants and Third-Party Plaintiffs*, v. JAMES PAUL GILLESPIE, Executor of the Estate of Pauline Brown Gillespie, Deceased, *Third-Party Defendant*.

(853 P.2d 692)

Opinion filed May 28, 1993.

*Terry L. Mann*, of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, argued the cause, and *Robert Martin*, of the same firm, was with him on the briefs for appellant.

*Jerry D. Bogle*, of Young, Bogle, McCausland, Wells & Clark, P.A., of Wichita, argued the cause, and *Glenn D. Young, Jr.*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal from an award of punitive damages entered in an action by the beneficiaries of a trust for recovery of damages for oil and gas investments made by the Trust.

The factual background is complex and is set forth in *Gillespie v. Seymour*, 250 Kan. 123, 823 P.2d 782 (1991), hereinafter re-

ferred to as *Gillespie I.* Originally, punitive damage awards were entered as follows:

For the period prior to July 1, 1987:

| | |
|---|---|
| Dorothea Seymour | $2,000,000 |
| Paul A. Seymour, Jr. | $2,000,000 |
| Paul A. Seymour, III | $    25,000 |

For the period after July 1, 1987:

| | |
|---|---|
| Dorothea and Seymour, Jr., jointly | $    89,250. |

In *Gillespie I,* we held the entry of punitive damage awards against Dorothea and Paul Seymour, III, were improper and reversed the same. As to the punitive damage awards against Paul Seymour, Jr., we stated:

"Seymour's conduct relative to the Trust's investments in Arrowhead has been discussed extensively elsewhere in this opinion and little would be gained by its repetition herein. It is sufficient to say that his egregious conduct as found by the trial court is legally adequate to support a punitive damage award.

"This brings up to examination the amount of the punitive damage awards entered against Seymour.

"K.S.A. 1990 Supp. 60-3701 provides, in pertinent part:

'(e) Except as provided by subsection (f), no award of exemplary or punitive damages pursuant to this section shall exceed the lesser of:

(1) The annual gross income earned by the defendant, as determined by the court based upon the defendant's highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded; or

(2) $5 million.

'(f) In lieu of the limitation provided by subsection (e), if the court finds that the profitability of the defendant's misconduct exceeds or is expected to exceed the limitation of subsection (e), the limitation on the amount of exemplary or punitive damages which the court may award shall be an amount equal to 1½ times the amount of profit which the defendant gained or is expected to gain as a result of the defendant's misconduct.

'(g) The provisions of this section shall not apply to any action governed by another statute establishing or limiting the amount of exemplary or punitive damages, or prescribing procedures for the award of such damages, in such action.

'(h) As used in this section the terms defined in K.S.A. 60-3401 and amendments thereto shall have the meaning provided by that statute.

'(i) The provisions of this section shall apply only [to] an action based upon a cause of action accruing on or after July 1, 1987 and before July 1, 1988.'

"The trial court found the plaintiffs' cause of action herein accrued in August 1987. Without stating any legal basis therefor, the trial court circumvented the operation of the statute by entering two separate punitive damage awards based on the effective date of the statute (July 1, 1987). The award for punitive damages based on conduct occurring prior to July 1, 1987, was made without application of the statute, and the post-July 1 award was presumably in compliance with the statute, although we cannot see from the record the basis for the $89,250 calculation.

"We hold that the determination of the punitive damage award against Seymour was erroneous. Only one award of punitive damages may be entered, and it must be made in accordance with the mandates of K.S.A. 1990 Supp. 60-3701. The awards of punitive damages entered against Seymour must be reversed and the case remanded for entry of a punitive damage award determined pursuant to K.S.A. 1990 Supp. 60-3701." 250 Kan. at 145-46.

On remand, no additional evidence was submitted on the issue of punitive damages. Oral arguments were heard and briefs filed. The district court's decision thereon is set forth in its memorandum opinion as follows:

"MEMORANDUM OPINION

"I have been directed by the Supreme Court to make a single punitive damage award. This ruling applies to Paul Seymour, Jr. I previously made awards for punitive acts before July 1, 1987 and for punitive act[s] after July 1, 1987. (July 1, 1987 is the effective date of K.S.A. 60-3701.)

"The previous award of punitive [damages] was for $89,250 subsequent to July 1, 1987 and for $2,000,000 prior to July 1, 1987.

"The Court finds that the profitability of defendant's misconduct exceeds the limitation of K.S.A. 60-3701(e). The profitability existed for many years more than the number of years set out in Section (e). The acts began in 1974 and continued until 1987. Plaintiffs suggest that the limitation of section (f) is $6,439,039.

"My previous award as to Paul Seymour, Jr., was $2,089,250. Other awards of punitive damages were made but were reversed on appeal.

"I will not change the amount of the award because of the reversals.

"Punitive damages are awarded to plaintiff against Paul Seymour, Jr., in the amount of $2,089,250.00.

"Judgment is entered for plaintiffs against defendant, Paul Seymour, Jr., for punitive damages in the amount of $2,089,250.00."

The parties agree that an appropriate award under K.S.A. 1992 Supp. 60-3701(e)(1) would be $865,861 (Seymour's highest gross annual income in the statutory five-year period). The district court stated that the profitability of defendant's misconduct exceeded the limitation of K.S.A. 1992 Supp. 60-3701(e)(1) and that the

award should be entered under K.S.A. 1992 Supp. 60-3701(f). The award was fixed at $2,089,250—the exact amount of the aggregate punitive damage award entered against Seymour, Jr., in *Gillespie I.* There is no indication as to how this figure was reached under subsection (f) of the statute. We have only the enigmatic statement, "I will not change the amount of the award because of the reversals."

What the district court characterized as plaintiffs' suggestion that the maximum award under subsection (f) is $6,439,039 is apparently based upon one and one-half times the compensatory damages entered in *Gillespie I.* On appeal, plaintiffs argue the award is supportable on the basis of the $2.6 million invested in Arrowhead Petroleum, Inc., by the Trust which, when multiplied one and one-half times, comes to $3.9 million. There is no punitive damage award against Arrowhead, of which Seymour owns 51 percent. Seymour contends there is no evidence admitted from which his "profit" could fairly be determined, as the gross receipts to Arrowhead from the Trust, with no deduction for expenses, in no way equate to Seymour's "profit" on the transaction. There is nothing to indicate how the trial court defined or computed Seymour's profit. Little would be gained by speculating on how the district court arrived at the punitive damage award imposed on remand.

The enactment of K.S.A. 1992 Supp. 60-3701 (and its companion K.S.A. 1992 Supp. 60-3702) represents a substantial change in the award of punitive damages in Kansas. Prior thereto, the trier of fact determined the amount of damages based upon rather nebulous factors. Appellate review thereof was limited. We stated the general rules relative to punitive damages in *Binyon v. Nesseth,* 231 Kan. 381, 386, 646 P.2d 1043 (1982), as follows:

"An appellate court will not find a punitive damage award excessive unless it is of a size to shock the conscience of the appellate court. See, *e.g., Cantrell v. R. D. Werner Co.,* 226 Kan. 681, 686, 602 P.2d 1326 (1979); *Henderson v. Hassur,* 225 Kan. 678, 697, 594 P.2d 650 (1979). The Court of Appeals in 7 Kan. App. 2d at 118 quoted *Henderson v. Hassur* on principles of law governing the extent of punitive damages allowed. That portion of *Henderson* reads:
'It is difficult, if not impossible, to lay down precise rules by which to test the question of when a verdict for punitive damages is excessive. *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, 273, 133 P.2d 149 (1943).

Punitive damages are imposed by way of punishing a party for malicious or vindictive acts or for a willful and wanton invasion of another party's rights, the purpose being to restrain him and to deter others from the commission of like wrongs. *Koch v. Merchants Mutual Bonding Co.,* 211 Kan. 397, 402, 507 P.2d 189 (1973). The law establishes no fixed ratio between actual and exemplary damages by which to determine excessiveness. In assessing punitive damages the nature, extent, and enormity of the wrong, the intent of the party committing it, and all circumstances attending the transaction involved should be considered. Any mitigating circumstances which may bear upon any of the above factors may be considered to reduce such damages. *Will v. Hughes,* 172 Kan. 45, 55, 238 P.2d 478 (1951). In fixing an award of punitive damages a jury may consider the amount of actual damages recovered, defendant's financial condition and the probable litigation expenses. *Ayers v. Christiansen,* 222 Kan. 225, 229, 564 P.2d 458 (1977).' 225 Kan. at 694."

Under K.S.A. 1992 Supp. 60-3701, a bifurcated proceeding is established. The trier of fact determines if punitive damages should be awarded. The court, in a separate proceeding, then establishes the amount thereof. A substantial list of factors is set forth in the court's consideration in determining the amount of the award. Limitations on the amount of the award are set forth in subsections (e) and (f) as follows (repeated for convenience):

"(e) Except as provided by subsection (f), no award of exemplary or punitive damages pursuant to this section shall exceed the lesser of:

(1) The annual gross income earned by the defendant, as determined by the court based upon the defendant's highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded; or

(2) $5 million.

"(f) In lieu of the limitation provided by subsection (e), if the court finds that the profitability of the defendant's misconduct exceeds or is expected to exceed the limitation of subsection (e), the limitation on the amount of exemplary or punitive damages which the court may award shall be an amount equal to 1½ times the amount of profit which the defendant gained or is expected to gain as a result of the defendant's misconduct."

We believe that it is the clear legislative intent of K.S.A. 1992 Supp. 60-3701(e) and (f) that sufficient findings of fact be made by the district court to afford meaningful appellate review of the size of the award. If the award entered had been $865,861 under (e)(1) it would have been sufficient herein to state that amount, as the parties had agreed on the figure. The district court opted, however, to award punitive damages subject to the restriction in

subsection (f). It was, therefore, incumbent upon the district court to make sufficient findings of fact to afford meaningful appellate review. This, obviously, did not occur herein and the punitive damage award against Paul Seymour, Jr., must, again, be reversed and the matter remanded for redetermination. Under the totality of the circumstances, we conclude that, upon remand, the matter should be assigned to a different district court judge.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.