Anthony J. RUIZ, Plaintiff,

v.

QUIKTRIP CORPORATION, Defendant.

Civ. A. No. 91–2483–EEO.

United States District Court,
D. Kansas.

July 15, 1993.

James E. Kunce, Overland Park, KS, for plaintiff.

Richard J. Haskins, Rose, Brouillette & Shapiro, Kansas City, KS, Walter W. Christy, Robert B. Worley, Jr., Kullman, Inman, Bee, Downing & Banta, New Orleans, LA, for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

 This matter is before the court for a determination of the amount of punitive dam-

ages to be assessed against defendant Quiktrip Corporation ("Quiktrip"). This case was tried to a jury from April 19, 1993, to April 23, 1993. The jury returned a verdict in favor of plaintiff on his claim for fraud by silence and for defendant on plaintiff's breach of contract and age discrimination claims. The jury also determined that punitive damages should be awarded on plaintiff's fraud claim. Consequently, the court held a post-trial hearing on June 30, 1993, in accordance with Kan.Stat.Ann. § 60–3702 (Supp.1992),[1] to determine the amount of punitive damages to be awarded. After carefully considering the evidence presented at the hearing and the parties' arguments in their briefs, the court is now prepared to determine the amount of punitive damages in this matter.

### Punitive Damage Assessment— Kan.Stat.Ann. § 60–3702

■ Since the enactment of Kan.Stat.Ann. §§ 60–3701 and 60–3702, the jury no longer determines the amount of punitive damages "based on rather nebulous factors." *Gillespie v. Seymour*, 253 Kan. 169, 853 P.2d 692, 694–95 (1993). Rather, the jury decides only whether punitive damages are warranted and the court, using the factors set forth in the statute, determines the amount in a separate proceeding. *Id.; see also* Kan.Stat.Ann. § 60–3702(a). The court notes that the seven factors discussed below are not exclusive. In assessing punitive damages in the instant case, the court has taken into consideration all admissible evidence presented during the trial and the punitive damages hearing.

1. The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct—Kan.Stat.Ann. § 60–3702(b)(1).

Plaintiff attempted to show that there was a strong likelihood that serious harm would result from defendant's failure to immediately disclose the discovery of the missing checks by stating, "the likelihood of resulting harm was certain denial of the single most important activity in the life of the plaintiff;

the right to continued employment." However, the court finds that denial of plaintiff's employment was far from a *certain* consequence of the defendant's failure to immediately inform plaintiff that the checks had been found.

The likelihood of harm factor is more pertinent in cases where the defendant continues a course of conduct, such as manufacturing a dangerous product, knowing there is a strong likelihood that the product will cause serious harm. *See, e.g., Fenstermacher v. Telelect, Inc.*, No. 90–2159–O, 1992 WL 100312, at *1 (D.Kan.1992) (hazardous design of lift device was "an accident waiting to happen"); *Folks v. Kansas Power & Light Co.*, 243 Kan. 57, 755 P.2d 1319 (1988) (negligent installation and maintenance of power lines); *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038 (1984) (failure to warn of known possible health risks of oral contraceptives).

Plaintiff's theory assumes that evidence that the missing checks had been found would have entitled him to reinstatement. However, there is simply no way to determine whether plaintiff would have been reinstated even if he had known about the discovery of the checks earlier. The jury's $40,000 verdict for plaintiff on the fraud claim implies that the jury believed that plaintiff *at least* had the right to know the checks had been found and to have tried to get his job back. Nonetheless, the jury also determined that defendant did not breach plaintiff's employment contract by terminating him. The court believes that if defendant was justified in terminating plaintiff because of the prior cash shortage, the likelihood of harm from defendant's failure to immediately inform plaintiff that the missing checks had been found was minimal.

2. The degree of the defendant's awareness of that likelihood—Kan.Stat.Ann. § 60–3702(b)(2).

It follows that the second factor, defendant's awareness of the likelihood of serious harm, mandates little discussion. Defendant

---

1. Kan.Stat.Ann. § 60–3702 is substantive in nature and thus governs in diversity cases in Kan-

sas. *See Metal Trading Servs. v. Trans–World Servs.*, 781 F.Supp. 1539, 1544 (D.Kan.1991).

should not be punished for some awareness of the likelihood of some minimal harm to plaintiff. We reiterate that our focus is on whether the defendant knew that serious harm would result from defendant's misconduct, i.e., defendant's failure to immediately disclose discovery of the checks, not whether defendant knew that serious harm would result from plaintiff's termination.

3. The profitability of the defendant's misconduct—Kan.Stat.Ann. § 60–3702(b)(3).

The instant case bears no similarity to the case cited by plaintiff, *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438 (10th Cir.1987), in which the defendant deliberately disregarded studies and reports revealing serious dangers of the high absorbency fibers used in their product and, in fact, profited from increased sales generated by emphasizing high absorbency in its advertising. Here, the issue of the profitability of Quiktrip's conduct was not addressed at trial. Similarly, there was no evidence at the hearing that defendant profited from failing to immediately disclose the discovery of the missing checks.

Actually, there was evidence that it cost Quiktrip $3,400 to terminate plaintiff. Plaintiff contends that Quiktrip profited by saving money on health insurance. However, the uncontroverted evidence at the hearing was that Quiktrip was self-insured and that plaintiff's replacement, in fact, filed health claims in excess of plaintiff's. In sum, plaintiff failed to prove that Quiktrip profited from his termination.

4. The duration of the misconduct and any intentional concealment of it—Kan.Stat.Ann. § 60–3702(b)(4).

5. The attitude and conduct of the defendant upon discovery of the misconduct—Kan.Stat.Ann. § 60–3702(b)(5).

These two factors may be considered together. Plaintiff contends that after defendant discovered the missing checks, it entered upon an intentional course of conduct aimed at concealing the discovery from plaintiff. Jim Denny, Quiktrip's human resources director, testified that while the store managers knew about the discovery, he did not know about it when he reported to the E.E.O.C. that $375 was missing. The court found Denny's testimony that the defendant did not engage in a prolonged series of actions to conceal the discovery of the checks particularly credible. The misconduct in this case was an isolated incident which occurred when two store-level managers failed to immediately disclose the discovery of the checks.

We do not believe that defendant's attitude and conduct upon discovering that the store managers had failed to inform plaintiff about finding the missing checks was particularly egregious. The court finds that Quiktrip disclosed the discovery of the checks at the unemployment compensation hearing. The court also disagrees with plaintiff's assertion that defendant attempted to conceal the finding of the checks during the discovery phase of this case. The court finds that defendant seasonably updated its discovery responses to reflect that the checks were recovered. In short, the court finds that substantial punitive damages are not warranted based on these two factors.

6. The financial condition of the defendant Kan.Stat.Ann. § 60–3702(b)(6).

Quiktrip is a privately-held corporation of substantial financial stature. Quiktrip has approximately 500 shareholders, all of whom are Quiktrip employees. The controlling interest is held by a small number of high-ranking management personnel. In 1990, the year of plaintiff's termination, Quiktrip's income before taxes exceeded $8,000,000; net income exceeded $5,000,000; and stockholder's equity exceeded $36,000,000.

Plaintiff suggests that no amount below $400,000 in punitive damages would be significant enough to deter defendant from similar "heinous" conduct in the future. We disagree. The uncontroverted testimony at trial was that Quiktrip's litigation expenses alone will reduce earnings per share by $.05 and that $.05 is a significant reduction in per share earnings. Moreover, the court does not believe that the substantial punitive damages requested by plaintiff are necessary to

deter future nondisclosures of information related to an employee's termination under the same or similar circumstances.

7. The total deterrent effect of other damages and punishment imposed upon defendant.

The jury assessed $40,000 in actual damages on plaintiff's fraud claim. Quiktrip contends that the costs to defend this case, in excess of $110,000, wield punishment enough, especially in light of the jury's determination that plaintiff's termination was justified. Quiktrip notes that this case commenced with some twelve claims and that Quiktrip prevailed on all but one of those claims either by summary judgment or at trial. While our research has not revealed any case characterizing a defendant's litigation costs as "damages" or "punishment" under section 60–3702, the court believes that some deterrence of future like conduct is inherent in such substantial litigation expenses. This is especially true where, as here, Quiktrip's pretrial litigation expenses were nearly three times the actual damages assessed by the jury.

8. Plaintiff's litigation expenses and other costs.

On the other hand, the plaintiff's attorney's fees and litigation costs are a factor that has long been recognized in assessing the amount of punitive damages. The court believes this to still be a relevant factor after the enactment of Kan.Stat.Ann. § 60–3702. *See Gillespie v. Seymour,* 253 Kan. 169, 853 P.2d 692 (1993) (citing *Ayers v. Christiansen,* 222 Kan. 225, 229, 564 P.2d 458, 461 (1977) (in awarding punitives, a court may take probable litigation expenses into account)).

Plaintiff testified at the hearing that his probable litigation expenses are $3,000 and his probable attorney's fees are approximately $20,000. In light of the jury's determination that punitive damages are warranted, the court finds that plaintiff's litigation expenses and other costs are proper items for consideration.

■ In conclusion, Quiktrip certainly should not be applauded for the way its managers chose to handle the discovery of the checks. Possibly more stringent controls on store-level management decisions were appropriate. Under the circumstances, however, the court does not believe that defendant's conduct was nearly as "heinous" as plaintiff seeks to characterize it. The court, therefore, finds that defendant shall be assessed $24,000 in punitive damages.

### *The Admissibility of Plaintiff's Proffered Evidence*

■ At the hearing, plaintiff proffered evidence about his financial and marital troubles after he was terminated by Quiktrip. Plaintiff urged that this evidence was relevant to show the relative positions of the parties which he contended was a factor for the court's consideration. In support, plaintiff relied primarily on *Folks v. Kansas Power & Light Co.,* 243 Kan. 57, 755 P.2d 1319 (1988), and *Weathers v. American Family Mut. Ins. Co.,* 793 F.Supp. 1002, 1027–28 (D.Kan.1992) (citing *Folks* with approval). The court believes that plaintiff misinterprets both of these cases.

The Kansas Supreme Court in *Folks* stated, "[i]n assessing punitive damages, the nature, extent, and enormity of the wrong, the intent of the party committing it, and all circumstances attending the transaction are allowed to be considered by the jury." *Id.,* 243 Kan. at 75–76, 755 P.2d at 1335 (emphasis added) (citing *Will v. Hughes,* 172 Kan. 45, 55, 238 P.2d 478 (1951)). However, the court also stated,

[a]n award of punitive damages must be reviewed in the light of the actual damages sustained, the actual damage award, the circumstances of the case (the nature, extent, and enormity of the wrong), the intent of the party committing it, the relative positions of the plaintiff and the defendant, the defendant's financial worth and the plaintiff's probable litigation expenses.

*Id.,* 243 Kan. at 78, 755 P.2d at 1336.

Significantly, punitive damages were awarded in *Folks* under common law and not Kan.Stat.Ann. §§ 60–3701 or 60–3702. *Folks,* 243 Kan. at 76, 755 P.2d at 1335 ("A plaintiff has no right to punitive damages except when awarded by the jury under the

common law.").[2] Moreover, a close reading of *Folks* reveals a distinction between the factors to be considered in *assessing* punitive damages and those to be considered in *reviewing* a jury award of punitive damages. *Id.*, 243 Kan. at 75–80, 755 P.2d at 1334–37; *see also Gillespie v. Seymour*, 853 P.2d at 694–95 (noting that prior to the enactment of the Kansas punitive damages statute, juries determined punitive damages amounts based on nebulous factors and that appellate review of an award was very limited).

Similarly, Kan.Stat.Ann. § 60–3701 only applied to part of the plaintiff's claims in *Weathers*. The court considered the parties' relative positions in *Weathers* as factors in reviewing the jury's award of punitive damages (for claims accruing prior to the effective date of Kan.Stat.Ann. § 60–3701), but not in assessing punitive damages on the plaintiff's malicious prosecution claim (which accrued after the effective date of the statute). *Id.* at 1027–28.

Finally, the court notes that even if the relative positions of the parties are factors which may be considered in assessing punitive damages, plaintiff's proffered testimony would not influence our decision on this issue. Much of the testimony offered by the plaintiff was already introduced into evidence at the trial. Plaintiff's proffered testimony regarding his divorce and debt collection problems has no probative value on the question before the court at this time—what is the appropriate amount of damages that will accomplish the dual objectives of punishment and deterrence? *See Gillespie*, 853 P.2d at 694–95. Punitive damages that inflict "a penalty or burden disproportionate to the wrongful act" are inappropriate. *Folks*, 243 Kan. at 78, 755 P.2d at 1336–37.

We emphasize that the only conduct on which punitive damages are being assessed is the defendant's failure to immediately disclose the discovery of the missing checks. Plaintiff's termination is not at issue. Whether plaintiff was divorced or suffered financial consequences after his termination, while possibly relevant on the issue of actual damages for the breach of employment contract claim, has little, if any, relevance to our determination of an appropriate amount for punitive damages on the fraud claim. Accordingly, defendant's objection to the proffered evidence is sustained. For the record, the court notes that the evidence was not considered by the court in determining the amount of the punitive damage assessment.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to enter judgment in favor of the plaintiff and against the defendant in the amount of $40,000 for actual damages on plaintiff's fraud claim, and the amount of $24,000 for punitive damages, with interest at the rate of 3.54% from the date of this order.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment in favor of the defendant on plaintiff's age discrimination and breach of contract claims.

---

**2.** The plaintiff's cause of action in *Folks* accrued in May, 1984. *Folks*, 243 Kan. at 59, 755 P.2d at 1324. Kan.Stat.Ann. § 60–3701 became effective July 1, 1987, and applies to claims accruing between July 1, 1987, and July 1, 1988. Kan. Stat.Ann. § 60–3702 became effective July 1, 1988, and applies to claims accruing on or after July 1, 1988.