**Dorothea W. SEYMOUR,**
**Plaintiff–Appellant,**

v.

**Grant THORNTON and Fox &**
**Co., Defendants–Appellees.**

No. 94–3300.

United States Court of Appeals,
Tenth Circuit.

March 20, 1996.

William Robert Martin and Terry L. Mann, of Martin, Pringle, Oliver, Wallace & Swartz, L.C., Wichita, Kansas, for Plaintiff–Appellant.

Stanley J. Parzen, James C. Schroeder, and Daniel J. Delaney of Mayer, Brown & Platt, Chicago, Illinois and Ron Campbell, Fleeson, Gooing, Coulson & Kitch, Wichita, Kansas for Defendant–Appellee Grant Thornton LLP.

F. James Robinson, Jr. of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kansas, for Defendant–Appellee Fox & Co.

Before EBEL and LOGAN, Circuit Judges, and HOLMES, District Judge.*

HOLMES, District Judge.

Dorothea W. Seymour appeals the district court's dismissal of her claims against the accounting firms of Grant Thornton and Fox & Company ("Fox"). Ms. Seymour sought indemnification for liability incurred by her in her capacity as co-trustee of the Pauline

---

* The Honorable Sven Erik Holmes, United States District Judge for the Northern District of Okla-  homa, sitting by designation.

Brown Gillespie Trust ("Gillespie Trust"). The district court held that Ms. Seymour's active wrongdoing in administering the trust barred her from seeking indemnification from the trust's accountants. The district court further held that the accountants owed no duty to Ms. Seymour to inform her of certain problems with respect to the trust's investments. We affirm.

## I.

The Court of Appeals of Kansas has noted that "[a] review of the pertinent facts necessary for the determination of this [case] requires a comfortable chair and a long attention span." *Gillespie v. Seymour*, 19 Kan. App.2d 754, 876 P.2d 193, 195 (1994) [*Gillespie IV*]. Indeed, the facts and issues underlying this appeal have formed the basis of four separate appeals within the Kansas courts. *Id.*, *Gillespie v. Seymour*, 253 Kan. 169, 853 P.2d 692 (1993) [*Gillespie III*]; *Gillespie v. Seymour*, 250 Kan. 123, 823 P.2d 782 (1991) [*Gillespie II*]; *Gillespie v. Seymour*, 14 Kan.App.2d 563, 796 P.2d 1060 (1990) [*Gillespie I*]. A review of the involved history of this dispute is therefore necessary for purposes of resolving the instant case.

In 1956, Warren Brown, a wealthy Wichita businessman, created two separate, revocable *inter vivos* trusts to benefit each of his two daughters and their respective children. One trust was for the benefit of Dorothy Brown Wofford, with the remainder to her four children, including Ms. Seymour (the "Wofford Trust"). The other trust was for the benefit of Pauline Brown Gillespie, with the remainder to her two children (the "Gillespie Trust"). Ms. Wofford and Ms. Gillespie were each named as a co-trustee of each trust. When Ms. Wofford died in 1973, the Wofford Trust terminated and the proceeds were distributed to her children. At that time, each trust contained approximately

$3,000,000. Ms. Seymour then succeeded her mother as one of the co-trustees, with Ms. Gillespie, of the Gillespie Trust.

By 1965, Ms. Gillespie had become concerned about the amount of income tax each trust was paying on its respective income from investments. At that time, each trust began investing in oil and gas interests. All such investments were made exclusively with Arrowhead Petroleum, Inc. ("Arrowhead"), a corporation in which Ms. Seymour personally owned 49 percent of the stock and her husband, Paul Seymour, Jr., owned the remaining 51 percent. Mr. Seymour managed Arrowhead. Ms. Seymour did not participate in the business affairs of the corporation.

> Between 1965 and 1973, each trust paid Arrowhead exactly the same amounts on the same dates and received the same interests in the same leases. In 1968, Gillespie determined that in order to achieve maximum tax benefits from the oil and gas investments for the two trusts, it would be best to make block investments with Arrowhead of amounts determined early in each calendar year. All block investments were from trust income.... Under the block investment program, any excess remaining at the end of the year was to be applied to wells drilled rather than returned to its respective trust.

*Gillespie II*, 823 P.2d at 787. Following the termination of the Wofford Trust and Ms. Seymour's assumption of the role of co-trustee, the Gillespie Trust continued to make block investments with Arrowhead between 1974 and 1987, with yearly amounts ranging from $110,000 to $300,000. All trust checks required the signature of both trustees.[1]

The *Gillespie* decisions detail how Paul Seymour, Jr., as owner and manager of Arrowhead, manipulated the block investments of the Gillespie Trust. The trial court found that Paul Seymour, in addition to overcharging the Trust for drilling expenses, had "sys-

---

1. We note that the Kansas Uniform Trustees' Powers Act provides that "[i]f the duty of the trustee and his or her individual interest ... conflict in the exercise of a trust power, the power may be exercised only by court authorization ... upon petition of the trustee." Kan.Stat. Ann. § 58–1205 (1994). We recognize that Ms. Seymour's actions in signing over trust proceeds to a corporation owned by her and her husband could constitute self-dealing in violation of this statute. However, since the trust indenture, which Ms. Seymour's counsel suggested at oral argument may authorize self-dealing, is not included in the record on this appeal, we are unable to determine whether this statute applies to the present case.

tematically engaged in a plan to allocate worthless or low value oil and gas interests to the Trust in exchange for its investments in the company he dominated, Arrowhead. In so doing, he assigned to his wife (Dorothea) and other favored entities the more valuable interests." *Gillespie II*, 823 P.2d at 790, 793. In fact, Ms. Seymour herself received a dramatically higher percentage of producing wells (25%) than did the Trust (1.5%). *Id.* at 795. Notably, the trial court in *Gillespie II* found that Ms. Seymour knew that Trust money was "being spread into dry holes." *Gillespie v. Seymour,* No. 87–4691, slip op. at 23 (Kan.Dist.Ct.1990).

In the winter of 1987, Ms. Gillespie's two children (the "beneficiaries"), brought an action against Ms. Seymour, as co-trustee of the Gillespie Trust, seeking an accounting of the Trust's investments with Arrowhead. On February 2, 1988, Ms. Gillespie died at age 92. At the time of her death, the Gillespie Trust contained assets in excess of $11,000,-000. Asserting mismanagement of the Gillespie Trust as a result of its investments in Arrowhead, the beneficiaries then amended their petition, seeking compensatory and punitive damages from Ms. Seymour, individually and in her capacity as co-trustee; her husband; and Arrowhead.

The beneficiaries also named Robert W. Burdge and Grant Thornton as defendants.[2] Mr. Burdge was an accountant for the Gillespie Trust. He was a partner in the Fox accounting firm until 1985, when he became a partner in Grant Thornton. Grant Thornton had assumed ownership of a substantial portion of Fox's assets. Following the trial court's dismissal of the claims against Grant Thornton and Mr. Burdge, the beneficiaries filed an interlocutory appeal. In *Gillespie I,* the Kansas Court of Appeals concluded that the beneficiaries failed to allege facts sufficient to support claims of negligence and breach of contract against Grant Thornton and Mr. Burdge, and did not have standing to pursue a claim for conversion. The court further held that the beneficiaries did not establish the existence of a fiduciary relationship between themselves and Mr. Burdge. The court concluded, however, that the beneficiaries could maintain an action for breach of trust against Grant Thornton and Mr. Burdge for conspiracy to overcharge the trust's account and participation in overcharging the account.

On remand, the trial court determined that Mr. Burdge had committed a breach of trust in failing to inform Ms. Gillespie that it was a net detriment to invest excess trust funds in Arrowhead at the end of the year for purposes of claiming a tax deduction. The trial court further employed a theory of successor liability to hold Grant Thornton liable for the actions of Mr. Burdge while still a Fox partner.

In *Gillespie IV,* the Kansas Court of Appeals reversed the trial court, holding that Mr. Burdge had not breached any legal duty owed to the beneficiaries, Ms. Gillespie, or her estate. 876 P.2d at 204–05. Noting that "[a]n accountant has a duty to do that which he or she is hired to do," the court relied upon the trial court's finding that Mr. Burdge was hired only to prepare the taxes for the Gillespie Trust, not to give investment advice. *Id.* at 204. The court thus held that "[a]bsent any indication Burdge was responsible for the decision to make the investments, there was no breach of a legal duty" to the beneficiaries. *Id.* This conclusion was based upon the following findings:

1. There is no independent duty of an accountant to say no to a client who has decided on a noncriminal financial course of action and does not ask the accountant's advice. This is true even if the accountant does not think the course of action is a good idea and another of the accountant's clients might benefit by it.

2. There is no substantial competent evidence proving Gillespie did not know what she was doing or was being fooled. She was a canny investor [with an] extreme dislike for paying taxes. She started the spreading and investing scheme before Burdge became an accountant for the trust.

---

2. Appellee Fox & Company, a defendant below, was not named as a defendant in the state action brought by the beneficiaries. Mr. Burdge, a defendant in the beneficiaries' action, is not a defendant herein.

3. There is no evidence Gillespie wanted Burdge's advice, and the trial court acknowledged it did not know what would have happened had advice been offered or given by Burdge.

4. Since Burdge was not shown to have engaged in a breach of trust, Grant Thornton could not have been found to have done so either.

5. Grant Thornton did not assume [ ] Fox's obligations in this matter and Fox was, and apparently still is, in a posture to be sued by any of its clients claiming wrongdoing. Therefore, Grant Thornton has no successor liability for work done by [ ] Fox.[3]

*Id.* Applying the same conclusions to the action by Ms. Gillespie's estate against Mr. Burdge and Grant Thornton, the court held that "there was not sufficient evidence to prove Burdge violated any duty which he owed to Gillespie or the estate." *Id.* at 205.

Meanwhile, in a separate bench trial, the trial court held that Ms. Seymour, her husband, and Arrowhead were jointly and severally liable for actual damages to the Gillespie Trust in excess of $4,000,000. The court also imposed punitive damages against Ms. Seymour of more than $2,000,000. Further, the trial court denied Ms. Seymour's third-party petition against Ms. Gillespie's estate, holding that "[Ms. Seymour] was more at fault" than Ms. Gillespie and thus was not entitled to indemnification from Ms. Gillespie's estate.

The Kansas Supreme Court reversed the award of punitive damages on appeal, concluding that the evidence was "insufficient to support the trial court's finding that [Ms. Seymour] was a co-conspirator and inconsistent with the trial court's other findings that [her] role was purely passive relative to the oil and gas investments." *Gillespie II,* 823 P.2d at 798. Furthermore, the court concluded:

> Weighed against all of the trial court's findings of Gillespie's dominance in the

Trust's investments, we have the findings of [Ms. Seymour's] purely passive rule of deferment to Gillespie plus the fact the investments were being made in [Ms. Seymour's] company and the heightened diligence she should have exercised on such investments. After careful consideration, we conclude that *the co-trustees were equally at fault and Dorothea has no right to indemnification.* However, she is entitled to contribution from the Gillespie estate of one-half of any portion of the judgment against her which she pays. . . .

*Id.* at 800 (emphasis added).

The instant case was commenced in 1990 when Ms. Seymour and her husband filed for bankruptcy under Chapter 11. She then instituted separate adversary proceedings against Grant Thornton and Fox, alleging breach of fiduciary duty and professional malpractice. Ms. Seymour also asserted a claim of successor liability against Grant Thornton for Fox's alleged wrongdoing. Upon withdrawal of the reference from the bankruptcy court, the district court consolidated the cases and dismissed the action pursuant to Fed.R.Civ.P. 12(b)(6).

First, the district court held that Ms. Seymour was an active wrongdoer and thus could not be indemnified for liability incurred as a result of that wrongdoing. Second, the district court noted that Ms. Seymour's complaint failed to allege facts that, if true, would prove that Grant Thornton and Fox breached a duty to the beneficiaries and that such breach was the proximate cause of the beneficiaries' injuries. The district court also denied Ms. Seymour's motion to file an amended complaint.

■■■ We review *de novo* the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6). *Ash Creek Mining Co. v. Lujan,* 969 F.2d 868, 870 (10th Cir.1992). We review the denial of the motion to amend a

---

**3.** Ms. Seymour admits on appeal that, pursuant to *Gillespie IV,* Grant Thornton has no successor liability. *See* Aplt.Reply Br. at 21–22. Therefore, Grant Thornton's only possible liability stems from the five months during which Mr. Burdge was a partner in that firm. Grant Thornton asserts that Ms. Seymour did not sufficiently

state a claim that any of Mr. Burdge's allegedly improper actions occurred during that 5–month period. *See* Aplee.Br. at 42–43 & n. 17. Because we conclude that dismissal of both defendants was proper on alternative grounds, we need not address this issue.

complaint only for abuse of discretion. *Massengale v. Oklahoma Bd. of Examiners in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994).

## II.

■ Ms. Seymour brought this claim against Grant Thornton and Fox seeking indemnification for her liability to the beneficiaries which was established in *Gillespie II*.[4] Unlike contribution, which contemplates a sharing of liability among tortfeasors, indemnity shifts the entire loss. *Cullen v. Atchison, Topeka & Santa Fe Ry.*, 211 Kan. 368, 507 P.2d 353, 361 (1973). Because indemnity is a complete remedy, it is available only to one "without fault" who has been made to "pay for the tortious act of another." *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192, 199 (1983). In that instance, "[t]he person paying has a right of action against the person at fault." *Id.* A common scenario involves a principal, held liable under the doctrine of *respondeat superior*, who seeks indemnification from its agent, the actual wrongdoer. If, however, the judgment against the party seeking indemnity is based upon the wrongdoing of that party, an action for indemnity is barred. *Becker v. Buman*, 239 Kan. 342, 721 P.2d 246, 252 (1986).

Ms. Seymour alleges that the district court erred in barring her indemnity claim because she was not an "active wrongdoer." Kansas law recognizes a distinction between liability incurred by virtue of "passive, implied or constructive negligence" and that resulting from "active, primary or direct negligence." *Cullen*, 507 P.2d at 361. The *Gillespie* opinions, however, clearly document conduct by Ms. Seymour that rises to the level of "active wrongdoing."

Ms. Seymour relies upon the statement by the Kansas Supreme Court that her role in the oil and gas investments was "purely passive." *Gillespie II*, 823 P.2d at 798. Such reliance is misplaced. This statement was merely part of the court's determination that her actions or inactions were not "malicious, vindictive, willful, or wanton" for purposes of imposing punitive damages. *Id.* The court expressly noted that this determination did not affect her liability for the underlying acts:

> As co-trustee, Dorothea had a duty to be informed on all Trust business and to act in the best interest of the Trust. She knew the trust was investing in Arrowhead, a company in which she owned a substantial interest. She should have exercised heightened diligence in ascertaining whether such investments were in the Trust's best interests. She failed to perform her duties as a co-trustee when she left the oil and gas investment matters to Gillespie. For this she has liability for compensatory damages.

*Id.*

■ Ms. Seymour apparently assumes that playing a passive role in the administration of trust assets renders her only a passive wrongdoer when those assets are misused. To the contrary, however, failure to act when one has a legal, non-delegable duty to do so constitutes "active wrongdoing" for the purposes of the law of indemnity. Ms. Seymour, as co-trustee, "had a duty to be informed on all Trust business and to act in the best interest of the Trust." *Id.* When she failed to act in the Trust's interest, Ms. Seymour breached her duty and, as a result of that breach, became an active wrongdoer.

The Kansas Supreme Court reached this same conclusion in the context of Ms. Seymour's indemnification claim against the estate of Ms. Gillespie. In determining that contribution and not indemnification, was appropriate, the court determined that Ms. Seymour's "improperly passive role" combined with "the fact the investments were being made in [her] company and the heightened diligence she should have considered" compelled the conclusion that indemnification should be denied. *Id.* at 800.

---

4. We reject Ms. Seymour's assertion on appeal that she has alleged non-indemnification claims. *See* Aplt.Br. at 24–25. Both her complaint against Grant Thornton and her complaint against Fox clearly contemplate indemnification, as the amounts requested in the prayers for relief, *see* aplt. app. at 6, 14–15, are identical to the amounts listed as her liability in the state court action, *see id.* at 4, 12.

We conclude that Ms. Seymour knew there were problems with the Arrowhead investments and that her failure to prevent the misuse of Gillespie Trust assets resulting from such investments constitutes "active wrongdoing." Therefore, under Kansas law, she is barred from seeking indemnification from Grant Thornton and Fox.

### III.

Even if Ms. Seymour's own wrongdoing did not bar her claim for indemnity, she has nevertheless failed to state claims against Grant Thornton and Fox for breach of fiduciary duty and professional malpractice. In *Gillespie IV*, the Kansas Court of Appeals held that "[a]bsent any indication Burdge was responsible for the decision to make the investment, there was no breach of a legal duty" owed the beneficiaries. 876 P.2d at 204. The court also held that there was insufficient evidence to prove that Grant Thornton and Mr. Burdge violated any duty owed to Ms. Gillespie.[5] *Id.* at 205. Both rulings were based in part on the court's conclusion that, under Kansas law, "[t]here is no independent duty of an accountant to say no to a client who has decided on a noncriminal financial course of action and does not ask the accountant's advice." *Id.*

In her complaints, Ms. Seymour bases both her malpractice and breach of fiduciary duty claims on the accountants' alleged failure to "disclose or inform plaintiff of the facts and circumstances . . . concerning the improper oil and gas investments made by The Trust. . . ." Aplt.App. at 12, ¶ 12; *see id.* at 5, ¶ 12; *id.* at 6, ¶ 14; *id.* at 13, ¶ 14. Ms. Seymour does not assert that she ever sought Mr. Burdge's advice on the trust's investments in Arrowhead, a company she and her husband owned. Indeed, the *Gillespie* opinions and the record in this case ren-

der it doubtful that Ms. Seymour had any contact with the accountant at all.

■ To prevail on her claims, Ms. Seymour therefore must establish that Mr. Burdge had a duty to notify her, upon his own initiative, of any problems presented by the Arrowhead investments. In this regard, she discounts the holding in *Gillespie IV*, claiming that

> [w]hile [the accountants] may have had no duty to say "no" to Pauline Gillespie, who was making her decisions based on full knowledge of the facts concerning the trust's investments, it requires quite a leap to construe that holding to mean that they had no duty to say *anything* to Dorothea Seymour. There is no basis or authority upon which this Court should conclude that no duty to say "no" is the equivalent of no duty to say anything.

Aplt.Br. at 29. We conclude, however, that under the facts present here, where the Kansas Supreme Court has apportioned fault equally between the co-trustees, there is no basis upon which now to distinguish between any duty of the accountants owed to Ms. Gillespie and any duty owed to Ms. Seymour. As Ms. Gillespie apparently played the dominant role in investing trust assets in Arrowhead, it is indeed illogical to impose a duty on the accountants to inform Ms. Seymour of problems occasioned by those investments when the law imposes no duty on them to inform either the person actually directing the investments or the beneficiaries. Because the accountants owed no duty either to the person directing the Arrowhead investments or to the parties directly affected by them, we therefore conclude that they could not have had a duty to inform the other co-trustee, a co-owner of Arrowhead, that such investments could be problematic. Thus, even assuming the existence of a fiduciary relationship between Ms. Seymour and the accountants,[6] she has failed to allege a

---

5. Although Grant Thornton and Mr. Burdge were the defendants in the state action and Grant Thornton and Fox are the defendants-appellees herein, both suits arose from the same acts of Mr. Burdge. Thus, we conclude that *Gillespie IV* is a reliable indicator of how the Kansas Court of Appeals would have resolved a similar action against Fox.

6. Grant Thornton and Fox contend that no fiduciary relationship existed between Mr. Burdge and Ms. Seymour and that she was not his client for purposes of maintaining a malpractice action. Aplee.Br. at 31–41. Because we conclude that Mr. Burdge did not have a legal duty to inform Ms. Seymour of any problems in connection with the Arrowhead investments even if such relation-

breach of any legal duty or acts rising to the level of professional malpractice.

## IV.

Ms. Seymour also contends that the district court erred in denying her motion to amend her complaints. She filed the motion to amend after the district court dismissed the complaints and entered judgment against her. "[O]nce judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed.R.Civ.P. 59(e) or 60(b)." *Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985). Ms. Seymour filed her motion to amend simultaneously with her Rule 59(e) motion, which was also denied in the district court order entered July 21, 1994. Thus, we hold that the district court's denial of Ms. Seymour's motion was not an abuse of discretion. *See Cannon v. City & County of Denver,* 998 F.2d 867, 879 (10th Cir.1993).

For the reasons set forth above, we uphold the district court's dismissal of Ms. Seymour's complaints against Grant Thornton and Fox and the denial of her motion to file amended complaints.

AFFIRMED.

ships existed, we need not address the nature of those relationships.