**Barbara WARDRIP, Plaintiff,**

v.

**Dillis L. HART, Defendant.**

**No. 94–1058–JTR.**

United States District Court,
D. Kansas.

Dec. 11, 1996.

Dan E. Turner, Turner & Turner, Topeka, KS, for Barbara Wardrip.

John L. Carmichael, Wilson, Lee & Gurney, Wichita, KS, Randall H. Elam, Wichita, KS, for Dillis L. Hart, MD.

## MEMORANDUM AND ORDER

REID, United States Magistrate Judge.

Following a jury trial, the jury returned a verdict which found, by clear and convincing evidence, that the defendant acted in a wanton manner and that plaintiff was entitled to punitive damages. On October 1, 1996, this court heard oral argument and testimony on the issue of assessment of punitive damages. Following the hearing, the parties submitted briefs on this issue (Doc. 207, 210, 212). After taking into consideration the briefs and the testimony and arguments presented, as well as the trial testimony and exhibits, the court is now prepared to rule.

 The express purpose of punitive damages is to punish the tortfeasor and to deter it and others from committing similar wrongs in the future. *Scheufler v. General Host Corp.*, 915 F.Supp. 236, 239 (D.Kan.1995); *Smith v. Printup*, 254 Kan. 315, 325, 866 P.2d 985 (1993). An award of punitive damages under Kansas law is governed by K.S.A. 60–3702. It provides in subsection (e) that the award shall not exceed the lesser of: (1) the annual gross income earned by the defendant in any one of the five years immediately before the act for which damages are awarded,[1] or (2) five million dollars. Defendant's

---

1. K.S.A. 60–3702(e)(1) provides that the court can exceed the annual gross income earned by the defendant for any one of the five years preceding the act for which damages are awarded if the court determines that such amount is clearly inadequate to penalize the defendant. If the court so finds, then the court can award up to 50% of the net worth of the defendant, as determined by the court. Plaintiff does not seek an amount in excess of the defendant's highest an-

annual gross income from 1987–1992 is as follows:

1987: $246,823.00
1988: $584,670.00
1989: $488,364.00
1990: $498,714.00
1991: $517,477.00
1992: $535,901.00

(Plaintiff's Exhibits 41–45; Doc. 210, attachment). Since defendant's gross annual income for the relevant five year period is well below five million dollars, it will serve as the statutory ceiling on punitive damages in this case.

■ K.S.A. 60–3702(b) provides seven enumerated factors which the court "may" consider in assessing punitive damages. These considerations are not mandatory or exclusive. *Scheufler*, 915 F.Supp. at 241; *Citizens State Bank v. Shearson Lehman Brothers, Inc.*, 874 F.Supp. 307, 308 (D.Kan. 1994); *Ruiz v. Quiktrip Corp.*, 826 F.Supp. 1284, 1285 (D.Kan.1993). As Judge Lungstrum ably stated:

> ... the determination of an amount of punitive damages should not be a purely mechanistic application of these factors. The judge before whom the case was tried, who has been exposed to the evidence and can evaluate for him or herself the nature of the conduct which gave rise to punitive damage liability, should exercise considerable discretion in fixing the proper amount to be awarded in order to accomplish the purposes for which punitive damages are authorized by statute.

*Citizens State Bank*, 874 F.Supp. at 310. In addition to the enumerated factors, courts have taken into consideration the plaintiff's attorney's fees and litigation costs or expenses in assessing punitive damages. *Scheufler*, 915 F.Supp. at 243; *Ruiz*, 826 F.Supp. at 1287.

■ The first enumerated factor is the likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct. The second factor is the degree of the defendant's awareness of that likelihood. The two factors are closely related and will be considered together. At trial, the undisputed evidence was that there was a serious risk of physical harm posed by the injection of absolute alcohol. Defendant admits that he erred by the use of absolute alcohol. The second factor is defendant's awareness of the likelihood of serious harm to the defendant by the use of absolute alcohol. In his deposition, the defendant stated that alcohol does destroy tissue. He also stated that even at a dosage of 5–20% alcohol, that there was a danger of tissue slough and infection (Doc. 207, attached at 160–162).[2] Despite this awareness, he used pure alcohol on the plaintiff. From this evidence, the court finds that the defendant had reason to believe that his use of absolute alcohol could seriously injure the plaintiff, and performed the treatment anyway. However, there was no evidence that the defendant anticipated the degree of harm or injury actually suffered by the plaintiff.

The third factor is the profitability of the defendant's misconduct. The profit for the defendant in this case amounted to the Medicaid payments made to the plaintiff for his treatment of the defendant. Plaintiff's exhibit # 113, which sets forth plaintiff's past medical expenses, lists payment to Dr. Hart for $949.50. Therefore, his profit for his treatment of the plaintiff would be somewhat less than that after deduction of his expenses incurred in the treatment. There was no evidence that the defendant profited from his treatment in any other manner.

The fourth factor is the duration of the misconduct and any intentional concealment of it. The duration of his misconduct was that time period when he treated the plaintiff with an injection of absolute alcohol. While the weight of the evidence would indicate that Dr. Hart should have realized the disastrous results of his treatment when her feet became infected, there was no evidence that he intentionally concealed his misconduct. The fact that he did not admit his misconduct

---

nual gross income for the relevant five year period. In addition, the court finds the annual gross income for the relevant five year period is adequate to penalize the defendant.

**2.** Fed.R.Civ.P. 32(a)(2) provides that a party's deposition may be used by an adverse party for any purpose.

does not mean that he intentionally concealed his misconduct. The position taken by plaintiff's legal counsel not to admit to liability until the eve of trial does not amount to intentional concealment of misconduct either.

The fifth factor set forth in the statute is the attitude and conduct of the defendant upon discovery of the misconduct. As this court has already stated, the defendant surely had to be aware of his misconduct once the results of the injection of absolute alcohol were known. Defendant himself admitted at trial that he committed malpractice. Prior to trial, at no time did the defendant ever admit to the plaintiff that he may have treated her improperly. Based upon his trial testimony, and his testimony at the hearing on punitive damages, the court finds that the defendant never appeared to be sincerely remorseful; at no time did he apologize to the plaintiff for his conduct, which without any dispute has caused the plaintiff tremendous physical, mental and emotional pain. The court therefore finds that this is an important factor to take into account when determining the amount of punitive damages to award in this case in order to deter defendant's demonstrated indifference from reoccurring in the future.

The sixth factor is the financial condition of the defendant. The defendant's 1993 adjusted gross income was $209,667. His 1994 adjusted gross income was $155,545 and his 1995 adjusted gross income was $64,694. In 1995, the defendant received a federal refund of $43,010 and a state refund of $5,607. However, defendant has never produced all of his financial records in his or his accountant's possession, as ordered by this court on July 30, 1996. During the hearing on punitive damages, the defendant stated that his accountant should have all of his recent financial records that had not yet been provided (R. at 17). His accountant has all of the documents used to prepare the income tax returns (R. at 18). The accountant also performs a review of defendant's accounts on a periodic basis (R. at 19). Despite the fact that the court specifically stated that the plaintiff does not have to seek defendant's financial records from the accountant, but

that the defendant must provide the financial records held by his accountant, the defendant stated at the hearing that plaintiff would have to obtain those records from his accountant (R. at 21–22). It is therefore not disputed that defendant's accountant has the financial records of the defendant, but that the defendant has failed to provide any of those financial records beyond tax returns.

■ The adverse inference rule provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him. *Callahan v. Schultz,* 783 F.2d 1543, 1545 (11th Cir.1986). For the adverse inference rule to be applicable, the following must be shown: (1) it appears the documentary evidence exists or existed; (2) the suppressing party has possession or control of the evidence; (3) the evidence is available to the suppressing party, but not to the party seeking production; and (4) it appears that there has been actual suppression or withholding of evidence. *Gilbert v. Cosco Inc.,* 989 F.2d 399, 406 (10th Cir.1993). All four factors have been found by the court in this case. The financial records exist, they are in the control of the defendant, they are not available to the plaintiff, and the defendant has refused to provide them despite an order of the court. In fact, in a letter dated August 2, 1996 to the defendant from attorney John Carmichael, Mr. Carmichael warned the defendant of the consequences of the failure to provide the financial records in the possession of his accountant, as ordered by the court on July 30, 1996 (Doc. 206, attachment). However, the defendant failed to obtain the documents from his accountant. Therefore, the court finds that the complete financial records, had they been produced, would have been unfavorable to the defendant, i.e., that defendant's financial situation is markedly better than that shown by his tax returns and testimony. The court finds that defendant's claim that he lacks the financial resources to pay a punitive damages award is not supported by the evidence, and of doubtful validity given his refusal to provide a complete disclosure of his financial

records.[3]

The seventh and final factor to be considered is the total deterrent effect of other damages and punishment imposed upon the defendant as a result of his misconduct, including, but not limited to compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected. The defendant has failed to provide any evidence of any other damages or punishment imposed upon him because of this misconduct. No evidence has been provided concerning damages to persons in situations similar to that of the plaintiff. There has also been no evidence that defendant could be subject to criminal penalties for his misconduct. The court therefore finds that there have been no other significant damages or punishment imposed upon the defendant because of his misconduct in this case. The actual damages awarded by the jury against the defendant in this case was $900,000.00, which was reduced to $850,000.00 by the court on July 30, 1996.

This court has also noted that plaintiff's attorney fees and expenses in prosecuting this claim can be considered in assessing punitive damages. Plaintiff provided evidence that her expenses in prosecuting her claim were $43,358.84 as of September 26, 1996 (Plaintiff's Exhibit # 40). Plaintiff had a 40% contingency fee agreement with her counsel in this case (Plaintiff's Exhibit # 46).

There is no doubt that any reasonable physician should have known that serious harm would result from the treatment used by the defendant in this case. The failure to determine the effect of a treatment before using it on a patient is a major consideration to take into account in assessing punitive damages. In addition, the court finds that the defendant has never apologized to the plaintiff or demonstrated genuine remorse

for his conduct. In addition, from defendant's deliberate failure to produce all of his financial records, the court can only assume that his financial situation must be markedly better than what is shown by his tax returns. On the other hand, the defendant only profited to a very limited degree from his conduct, and there is no evidence that he intentionally concealed his misconduct. After taking into account all the evidence and the statutory considerations, the court will assess against the defendant $200,000.00 in punitive damages.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to enter judgment in favor of the plaintiff and against the defendant in the amount of $850,000.00 in actual damages ($300,000.00/economic loss, $300,000.00/medical expenses, and $250,000/noneconomic damages) and $200,000.00 in punitive damages.

■ The next matter before the court is the award of sanctions, pursuant to this court's order of September 9, 1996. The matter has also been fully briefed by the parties. Related to this is defendant's motion for reconsideration of the September 9, 1996 order (Doc. 203).

The court order of July 30, 1996 directed defendant to provide to the plaintiff "all financial records of the defendant in the possession of his accountant, if they have not already been produced, by August 12, 1996." That order stated that the plaintiff did not have to seek those documents from the accountant; the defendant had the legal right and a duty to obtain those records for the plaintiff. Despite this clear order, the defendant in the hearing on October 1, 1996 informed plaintiff's counsel that plaintiff would have to obtain defendant's financial records from defendant's accountant. Defendant's testimony clearly indicated that the accountant had financial records which had not been provided (R. at 17–23). Other than tax re-

---

3. Defendant also has claimed that his financial situation is impaired by a tax lien and garnishment by the I.R.S. However, at the hearing, defendant provided no documentation of the lien or garnishment, despite the court order that all financial records be disclosed by August 12, 1996. It was not until the October 10, 1996 brief (Doc. 210) that defendant provided copies of

these liens. However, the copies are largely illegible. Given that they were not timely provided to plaintiff's counsel for review prior to or at the hearing, and given the fact that the copies attached to their brief are illegible, the court will accord no weight to defendant's claim that his financial situation is impaired by any tax liens or garnishments.

turns, the only other financial records provided by the defendant was on May 20, 1996, when ledger and balance sheets were provided from 1989 to 1994 (Doc. 204, ¶ 7). Defendant did not provide any documentation regarding any IRS liens or garnishments prior to the hearing on October 1, 1996. When they were finally provided as an attachment to a subsequent pleading, they were illegible.

Defendant's counsel argues that "the existence or non-existence of additional assets or liabilities are not relevant under the statute" (Doc. 206, ¶ 3). First, they are relevant since the financial condition of the defendant is one of the factors specifically mentioned in K.S.A. 60–3702. Second, this court has ordered that "all" financial records be turned over; a party may appeal a court order that they believe to be erroneous, but they cannot ignore the clear directives of a court order. Counsel goes on to state that Dr. Hart could not obtain the documents from his accountant; however, they fail to provide any explanation of what steps were taken to obtain them, or any evidence that the accountant had refused to provide them, or why legal action was not taken to obtain documents to which defendant was legally entitled. Blanket assertions that defendant could not obtain his own financial records simply do not suffice.

However, it is clear from the pleadings that Dr. Hart was personally informed of the need to obtain those documents (Doc. 206, ¶¶ 5–8). In fact, in a letter dated August 2, 1996 from John Carmichael, defendant's personal attorney, Mr. Carmichael indicated to the defendant that it was "imperative" that we abide by the court order to provide financial records, and that if the records were not made available, "I expect Judge Reid will impose serious sanctions as a result of our failure to cooperate with the discovery process." The letter concludes by saying that if we withhold relevant records by accident or intent, "I believe it is very likely Judge Reid will take serious action which could be very detrimental to you." After reviewing these pleadings, and in particular the letter from Mr. Carmichael, it is clear to this court that the person responsible for not providing the financial records is the defendant and not his counsel. His counsel could not have made it more clear to the defendant what would be the consequences of the failure to provide the financial records. Mr. Carmichael provided sage advice concerning what action this court would take for failure to adhere to this court's order.

In reviewing the factors to consider in determining monetary sanctions, *Kiser v. Boeing Co.*, 163 F.R.D. 13, 15 (D.Kan.1995), the court finds that the defendant has clearly acted with malice and bad faith in not providing his financial records in the possession of his accountant. Given his failure to provide a clear picture of his financial condition, the court has invoked the adverse inference rule, and finds that his ability to pay a sanction is significantly better than that provided by his tax returns. The court also finds that defendant's failure to turn over all of his financial records resulted in a delay in the setting of a hearing date for determining punitive damages. In order to deter future misconduct of this nature, the court finds that sanctions of $2,000.00 shall be assessed against the defendant personally. This amount reflects the attorney fees set forth in Doc. 205, plus a reasonable amount to cover attorney fees and expenses in preparing the affidavit, and in responding to the motion for reconsideration (Doc. 204). The defendant shall pay this amount to plaintiff's counsel no later than January 15, 1997.

IT IS THEREFORE ORDERED that sanctions of $2,000.00 shall be assessed against the defendant personally pursuant to Fed.R.Civ.P. 37(b)(2). This amount shall be paid to plaintiff's counsel no later than January 15, 1997. Failure to pay this amount or show good cause why this amount cannot be paid by that date will result in a recommendation to the district court judge that the defendant be held in contempt of court pursuant to 28 U.S.C. § 636(e).

IT IS FURTHER ORDERED that the motion to reconsider (Doc. 203) is denied.